PEOPLE v SABIN (ON REMAND)

Docket No. 187226. Submitted January 27, 1999, at Lansing. Decided June 4, 1999, at 9:15 A.M. Leave to appeal granted 461 Mich 896.

James A. Sabin was convicted by a jury in the Kalamazoo Circuit Court, Philip D. Schaefer, J., of first-degree criminal sexual conduct involving his minor daughter, was found by the court to be a second-offense habitual offender, and was sentenced to life imprisonment. The Court of Appeals, GRIFFIN, P.J., and MCDONALD and C. W. JOHNSON, JJ., reversed and remanded for a new trial, holding that the defendant was denied a fair trial because the trial court admitted into evidence at trial the testimony of the defendant's stepdaughter that, more than ten years earlier while she was a minor, the defendant had committed acts of sexual misconduct against her, as well as the testimony of the defendant's wife that the defendant, at the time of the offense alleged in this case, was subject to a state agency order prohibiting him from having contact with children. 223 Mich App 530 (1997). The Supreme Court, in lieu of granting leave to appeal, remanded the case to the Court of Appeals for reconsideration in light of *People v Starr*, 457 Mich 490 (1998), and *People v Crawford*, 458 Mich 376 (1998). 459 Mich 920 (1998).

On remand, the Court of Appeals *held*:

1. In construing MRE 404(b), which governs the admissibility of evidence of other crimes, wrongs, or acts, the *Crawford* majority stated that to be admissible the proffered evidence must be probative of something other than the defendant's propensity to commit the crime and must be relevant and material to an issue of consequence. The determination by the Court of Appeals in its prior opinion in this case that the other-acts evidence offered through the testimony of the stepdaughter should not have been admitted is consistent with *Crawford*. There was little physical similarity between the acts of molestation described by the stepdaughter and the rape alleged by the victim in this case, nor did the testimony indicate that the defendant committed the alleged acts pursuant to a common scheme, plan, or system.

2. In construing MRE 404(b), the *Starr* majority stated that for other-acts evidence to be excludable the unfair prejudice of the evi-

dence must substantially outweigh its probative value. *Starr* does not alter, contradict, or expand the standards set forth in *People v VanderVliet*, 444 Mich 52 (1993), mod on other grounds 445 Mich 1205 (1994), except to emphasize the third prong of the *Vander-Vliet* test. The *VanderVliet* principles, as interpreted in *Starr*, were correctly applied by the Court of Appeals in its prior opinion in this case.

3. The testimony of the defendant's wife concerning the state agency order was not relevant to any issue in this case, MRE 401, and its probative value, if any, was substantially outweighed by the danger of unfair prejudice, MRE 403.

4. The defendant's conviction must be reversed because the prosecution has not sustained its burden of proving that it is highly probable that the erroneously admitted evidence did not affect the verdict.

Reversed and remanded for a new trial.

WHITBECK, J., dissenting, stated that the four-pronged test articulated by the majority in *People v VanderVliet*, *supra*, remains the operative rule with respect to the admissibility of other-acts evidence and that the other-acts evidence at issue in this case was admissible under *VanderVliet*, as amplified by *Starr* and *Crawford*. Under *VanderVliet*, other-acts evidence may be admitted if it is offered for a proper purpose under MRE 404(b), it is relevant under MRE 402 as enforced through MRE 104(b), and its probative value is not substantially outweighed by unfair prejudice. Also, under *VanderVliet*, a trial court, upon request, may provide a limiting instruction to the jury.

The first prong of *VanderVliet* was further amplified by *Starr* and *Crawford*. *Starr* places the burden of articulating a proper noncharacter purpose for proffered other-acts evidence on the prosecution, not the trial court. *Crawford* directs trial courts to vigilantly weed out character evidence that is disguised as something else. In this case, the prosecution articulated multiple noncharacter purposes for the admission of the testimony of the defendant's stepdaughter and wife concerning alleged sexual misconduct by the defendant and the state agency order, and none of the asserted purposes were disguised character evidence.

The second prong of *VanderVliet*, which requires that the other-acts evidence be logically relevant and legally relevant, was further amplified by *Starr* and *Crawford*. *Starr* makes the observations that relevant evidence has the characteristics of being material and having probative force and that to be material the evidence must be logically relevant to an issue or fact of consequence at trial. *Crawford* states that the proffered other-acts evidence must be probative of something other than the defendant's propensity to

commit the crime. In this case, in light of the defendant's general denial of guilt, the testimony of the stepdaughter was material and probative with respect to the elements of the charged crime. The stepdaughter's testimony was also probative with respect to noncharacter issues involving absence of mistake and credibility of the victim's testimony. The testimony of the defendant's wife was relevant to and probative of a noncharacter issue, i.e., the claim that the victim delayed reporting the alleged sexual misconduct by the defendant out of her fear that a report would have broken up the family in light of the state agency order that prohibited the defendant from having contact with children.

The third prong of *VanderVliet*, which requires that the probative value of proffered other-acts evidence not be substantially outweighed by unfair prejudice, was further amplified by *Starr* and *Crawford*. *Starr* states that what is sought to be avoided is the danger of unfair prejudice, not prejudice that stems only from the abhorrent nature of the crime itself. *Crawford* states that other-acts evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury. In this case, the probative value of the testimony of the defendant's stepdaughter was relevant principally to the victim's credibility, a basic issue confronting the jury, and was not outweighed by unfair prejudice. Likewise, the testimony of the defendant's wife was not unfairly prejudicial and was probative with respect to the reason for delay in reporting the abuse.

*Starr* and *Crawford* do not directly address the fourth prong of *VanderVliet*, which provides that a trial court, if requested, may provide a limiting instruction to the jury. In this case, the trial court's limiting instructions to the jury concerning the testimony of the defendant's stepdaugther were proper. The defense did not request a limiting instruction with respect to the testimony of the defendant's wife concerning the state agency order.

1. CRIMINAL LAW — EVIDENCE — OTHER BAD ACTS.

> Evidence of other crimes, wrongs, or acts, in order to be admissible, must be probative of something other than the defendant's propensity to commit the charged crime and must be relevant and material to an issue of consequence (MRE 404[b]).

2. CRIMINAL LAW — EVIDENCE — OTHER BAD ACTS.

> The decision in *People v Starr*, 457 Mich 490 (1998), did not alter, contradict, or expand the standards set by *People v VanderVliet*, 442 Mich 52 (1993), mod on other grounds 445 Mich 1205 (1994), for the admission of evidence of other crimes, wrongs, or acts (MRE 404[b]).

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *James J. Gregart*, Prosecuting Attorney, and *Judith B. Ketchum*, Assistant Prosecuting Attorney, for the people.

*Martin J. Beres*, for the defendant on appeal.

ON REMAND

Before: GRIFFIN, P.J., and McDONALD and WHITBECK*, JJ.

GRIFFIN, P.J. On May 16, 1997, this Court reversed defendant's convictions and remanded for a new trial, holding that "[d]efendant was entitled to a fair trial but did not receive one." *People v Sabin*, 223 Mich App 530, 539; 566 NW2d 677 (1997). Thereafter, the people timely appealed, and on August 29, 1997, the Supreme Court issued an order holding the appeal in abeyance pending the decision of *People v Starr*, 457 Mich 490; 577 NW2d 673 (1998). No further action was taken by the Supreme Court until December 22, 1998, at which time "[i]n lieu of granting leave to appeal, the case is remanded to the Court of Appeals for reconsideration in light of *People v Starr*, 457 Mich 490 [577 NW2d 673] (1998), and *People v Crawford*, 458 Mich 376 [582 NW2d 785] (1998). MCR 7.302(F)(1)." 459 Mich 920 (1998).

On remand, we have reconsidered our prior decision in light of *Starr* and *Crawford*. After doing so, we reaffirm our previous opinion and again reverse and remand for a new trial.

---

* On remand, Judge WHITBECK has been substituted for Circuit Judge C. W. Johnson.

I

*PEOPLE v CRAWFORD*

*People v Crawford, supra,* is the most recent Supreme Court decision construing a much litigated rule of evidence, MRE 404(b). In *Crawford,* the defendant was convicted following a jury trial of possession with intent to deliver 50 to 225 grams of cocaine. MCL 333.7401(2)(a)(iii); MSA 14.15(7401)(2)(a)(iii). Over the defendant's objection, the people moved to admit into evidence testimony regarding the defendant's prior conviction of delivery and conspiracy to deliver 225 to 650 grams of cocaine. During a pretrial motion, the prosecutor successfully convinced the trial court to admit evidence of the prior conviction on the grounds that it was relevant to show "defendant's knowledge of the presence of cocaine and his intent to deliver it." *Crawford, supra* at 381.

After the defendant's conviction was affirmed by this Court, the defendant appealed to the Supreme Court, which reversed and remanded to the trial court for further proceedings. The Supreme Court held that the purposes for which the prior conviction was offered by the prosecution were not relevant and material to the issues in the case. The Supreme Court explained:

> [A] common pitfall in MRE 404(b) cases is the trial courts' tendency to admit the prior misconduct evidence merely because it has been "offered" for one of the rule's enumerated proper purposes. Mechanical recitation of "knowledge, intent, absence of mistake, etc.," without explaining how the evidence relates to the recited purposes, is insufficient to justify admission under MRE 404(b). If it

were, the prosecutor could routinely admit character evidence by simply calling it something else. Relevance is not an inherent characteristic, *Huddelston* [*v United States*] 485 US [681] 689 [108 S Ct 1496; 99 L Ed 2d 771 (1988)], nor are prior bad acts intrinsically relevant to "motive, opportunity, intent, preparation, plan," etc. Relevance is a relationship between the evidence and a material fact at issue that must be demonstrated by reasonable inferences that make a material fact at issue more probable or less probable than it would be without the evidence. [*Crawford, supra* at 387-388 (emphasis in original).]

After noting that all elements of a criminal offense are "in issue" when a defendant enters a plea of not guilty, the Supreme Court set forth the initial screening function of MRE 404(b):

In the context of prior acts evidence, however, MRE 404(b) stands as a sentinel at the gate: the proffered evidence truly must be probative of something *other* than the defendant's propensity to commit the crime. If the prosecutor fails to weave a logical thread linking the prior act to the ultimate inference, the evidence must be excluded, notwithstanding its logical relevance to character. [*Crawford, supra* at 390 (emphasis in original).]

*Crawford* is consistent with numerous decisions of this Court, including our prior *Sabin* opinion and *People v Hoffman*, 225 Mich App 103; 570 NW2d 146 (1997). In *Hoffman*, we affirmed a ruling of the trial court that admitted other-acts evidence for the purpose of establishing the defendant's motive to commit the crime. There, the defendant's professed hatred toward women (misogyny) and his statement that "women are all sluts and bitches and deserve to die" were held to establish more than a propensity toward violence. "[T]he other-acts evidence was relevant and material to defendant's motive for his unprovoked,

cruel, and sexually demeaning attack on his victim. . . . Absent the other-acts evidence establishing
motive, the jurors may have found it difficult to
believe the victim's testimony that defendant committed the depraved and otherwise inexplicable actions."
*Id.* at 109-110.

Further, in *Hoffman,* we discussed in a footnote the
confusion that has arisen with the Supreme Court's
characterization of MRE 404(b) as a rule of inclusion,
not exclusion:

> Michigan has now joined with a number of other jurisdic
> tions in labeling MRE 404(b) as a rule of inclusion, not
> exclusion. However, this characterization has been criti
> cized by a leading authority as being inaccurate:
>
> "As we have noted, the Federal and Revised Uniform
> Rules state the general rule as one of exclusion. See *supra*
> § 186. But see § 190, at 558 note 9, collecting cases that
> characterize Rule 404(b) as "inclusionary." *The term "inclu
> sionary" is poorly chosen, however, for it merely indicates
> that the enumeration of issues in Rule 404(b) as to which
> evidence of other crimes or bad acts may be introduced is
> not exhaustive.* The rule remains an exclusionary one: it
> keeps certain evidence out. [1 McCormick, Evidence (Prac
> titioner Treatise Series, 4th ed), § 188, p 793, n 7.]" [*Hoff
> man, supra* at 105, n 1 (emphasis added).]

The above comment is in accord with *Crawford,*
which holds that although the categories set forth in
MRE 404(b) are not exhaustive, the purpose for
which the evidence is offered must relate to an issue
of consequence.

In defining "relevant evidence," MRE 401  specifies
that for evidence to be relevant, it must also be
*material:*

"Relevant evidence" means evidence having any tendency
to make the existence of any fact *that is of consequence to
the determination of the action* more probable or less prob-
able than it would be without the evidence. [Emphasis
added.]

Further, MRE 402 provides that irrelevant evidence
is not admissible:

All relevant evidence is admissible, except as otherwise
provided by the Constitution of the United States, the Con-
stitution of the State of Michigan, these rules, or other rules
adopted by the Supreme Court. *Evidence which is not rele-
vant is not admissible.* [Emphasis added.]

Finally, as noted by the *Crawford* Court, the propo-
nent of proposed evidence always bears the burden
of showing its relevance and materiality:

The dissent vociferously objects to the proposition that
the prosecutor must bear the burden of articulating a
proper noncharacter purpose for the admission of prior
acts evidence under MRE 404(b). However, the principle
that the proponent of evidence bears the burden of estab-
lishing relevance and admissibility is a matter of basic horn-
book law. See 22 Wright & Graham, Federal Practice & Pro-
cedure, § 5166, pp 65-76. Instead of fashioning an argument
why the prosecutor should be relieved of this burden in
MRE 404(b) cases, the dissent accuses the majority of
somehow shifting or heightening the prosecutor's burden
under MRE 404(b). Our requirement that the prosecutor
articulate a proper noncharacter purpose comports not only
with the plain language of MRE 404(b), but also with the
approach utilized by the majority of federal circuits. [*Craw-
ford, supra* at 386, n 6.]

In the present case, the trial court admitted, as
other-acts evidence, testimony regarding defendant's
prior alleged sexual misconduct involving the victim's

stepsister. These alleged acts of abuse ended more than ten years before trial and did not result in a charge or conviction. In permitting the other-acts testimony, the trial court ruled that "the evidence tends to show that defendant has committed other wrongful acts involving a child or juvenile, who was a member of the same household, which is the exact situation we have in the allegations of this trial." Although on appeal the prosecution argues that the other-acts evidence may have been admissible to establish defendant's "common scheme, plan, or system," the other acts were substantially dissimilar from defendant's charged conduct:

> There is little physical similarity between the repeated acts of oral molestation described by the victim's stepsister and the violent, forcible vaginal rape alleged by the victim. Nor does the testimony indicate that defendant committed the acts in the same room or had some unique, consistent pattern or scheme in approaching, overcoming, or treating his victims. [*Sabin, supra* at 536.]

In summary, after reconsideration, we conclude that our previous decision was consistent with, and is now supported by, the precedent of *Crawford*.

II

*PEOPLE v STARR*

The second case that we are asked to consider is *People v Starr, supra.* In *Starr*, the trial court admitted into evidence other-acts evidence regarding the defendant's sexual abuse of the victim's younger half-sister. According to the Supreme Court, the testimony

of the victim's half-sister was that the defendant "had subjected her to similar sexual conduct and rape [as experienced by the victim]." *Starr, supra* at 492. At trial, the prosecution offered the other-acts testimony of the half-sister "for a myriad of reasons," *id.* at 500, including to prove a common scheme, plan, or method. In holding the other-acts evidence admissible, the Supreme Court noted "[o]f these theories, only one needs to be a proper, noncharacter reason that compels admission for the testimony to be admissible." *Id.* at 501. With regard to the issue of scheme and plan, the Court stated "the half-sister's testimony revealed a striking similarity between the half-sister's age, living arrangement, and relationship with defendant at the time the abuse of the half-sister began, to that of the victim. The similarity explains why the mother became so concerned with her daughter's relationship with defendant . . . ." *Id.* at 503.

While the *Starr* Court found a proper purpose for the admission of the other-acts evidence, its major holding was that for relevant and material evidence to be excluded pursuant to the MRE 404(b) balancing test, the unfair prejudice of the evidence must *substantially* outweigh its probative value. *Starr, supra* at 499. In this regard, our reading of *Starr* leaves us with a firm belief that it does not alter, contradict, or expand the Court's earlier standards set forth in *People v VanderVliet*, 444 Mich 52; 508 NW2d 114 (1993), mod on other grounds 445 Mich 1205 (1994), except to emphasize the third prong of *VanderVliet*. On reconsideration, we hold that our earlier opinion correctly applied the principles of *VanderVliet* as interpreted in *Starr*.

III

The second basis for our prior decision was that the trial court committed error requiring reversal by admitting, over objection, testimony that defendant returned to his home in violation of an "agency order" that prohibited him from having any physical contact with his children. This evidence, which implied that defendant was on parole at the time of the present offense, was not relevant to any issues in the case. *Sabin, supra* at 537-539. MRE 401. Furthermore, the probative value, if any, of this evidence was *substantially* outweighed by the danger of unfair prejudice. MRE 403. *Starr, supra.*

Our previous holding that the evidentiary errors were not harmless was made without the benefit of *People v Gearns*, 457 Mich 170; 577 NW2d 422 (1998). See also *People v Graves*, 458 Mich 476, 482-483; 581 NW2d 229 (1998). However, after reconsidering our decision in light of the new harmless-error standard, we again conclude that defendant's convictions must be reversed because the prosecution has not sustained its burden of proving that it is "highly probable" that the erroneously admitted evidence did not affect the verdict. *Gearns, supra* at 203-205.

Reversed and remanded for a new trial. We do not retain jurisdiction.

MCDONALD, J., concurred.

WHITBECK, J. (*dissenting*). I respectfully dissent. My colleagues have attempted, in my view conscientiously and fairly, to respond to the mandate of the Michigan Supreme Court to reconsider this case in light of *People v Starr*, 457 Mich 490; 577 NW2d 673

(1998), and *People v Crawford*, 458 Mich 376; 582 NW2d 785 (1998). I must say that the Supreme Court may have set us an impossible task; it simply may not be possible to reconcile the majority opinions in those two cases[1] and then to apply them to the facts in this case. It is not a particularly profitable exercise for this Court to attempt the impossible. Rather, I suggest that the most constructive function this Court can perform in this much-litigated area is to review the four legs of the test for admissibility of other-acts evidence under MRE 404(b) that the majority of the Supreme Court articulated in *People v VanderVliet*, 444 Mich 52; 508 NW2d 114 (1993), mod on other grounds 445 Mich 1205 (1994). We should conduct this review of the facts of this case, with the presumption that this four-legged test remains the operative rule, and then attempt to reach at least somewhat rational conclusions, insofar as that is possible, in light of *Starr* and *Crawford*. This is a rather laborious, indeed a tedious, process but I attempt it below.

### I. SUMMARY OF BASIC FACTS

#### A. THE VICTIM'S TESTIMONY

The basic testimony in this case came from the victim. She testified that she was aged thirteen and that her birthday was July 31, 1981.[2] The victim said that "[s]ometime around the end of September [1994]" she

---

[1] Indeed, I note that Justice BOYLE, the author of *People v VanderVliet*, 444 Mich 52; 508 NW2d 114 (1993), mod on other grounds 445 Mich 1205 (1994), in her dissent in *Crawford* rather overtly implied that the Supreme Court in *Crawford* had rather covertly overruled *VanderVliet*. See *Crawford, supra* at 417-419 (dissenting opinion of BOYLE, J., joined by WEAVER and TAYLOR, JJ.)

[2] Thus, the victim was thirteen at the time of the alleged sexual assault in September 1994.

was alone with her father—defendant—in the living room while no one else was home. According to the victim, defendant "started acting, like, really weird, and locked the door, unplugged the phone and stuff like that." She testified that he eventually held her down, removed most of her clothes, and had sexual intercourse with her, specifically that he put his penis in her vagina for "[m]aybe about 10 minutes." The victim testified that after the incident defendant said to her "if [she] were to tell, like, [her] mom, she would just be really upset with [her] for breaking her family up again, and just stuff like that" and that she believed him.

At trial, the prosecutor successfully introduced two different types of evidence relating to the prior acts of defendant. The first type of evidence came in the form of testimony by the victim's half-sister regarding the half-sister's alleged prior sexual contacts with defendant, her stepfather, while the half-sister was living with defendant and the half-sister's (and also the victim's) mother. I will refer to this evidence as the "prior-uncharged-acts" evidence. The second type of evidence came in the form of testimony by the mother about a state agency order that precluded defendant from contacts with children under the age of seventeen. I will refer to this evidence as the "state agency order" evidence.

### B. THE PRIOR-UNCHARGED-ACTS EVIDENCE

The victim's half-sister testified before the jury that she was born in 1972 and that defendant was her stepfather from approximately the time she was aged six to the time she was aged fourteen. The half-sister said that, starting when she was aged six, defendant

"sexually abused [her]. He performed oral sex on [her]" and that, at times, this happened three to seven times a week. The prosecutor elicited testimony from the half-sister that defendant specifically touched the vaginal area of her body with his tongue and that she recalled him once laying her on her side and putting his penis between her legs and touching her vaginal area with it. The prosecutor also elicited testimony about other physical details attendant to these sexual assaults. The half-sister indicated that as a child she was asked about these allegations and denied them because she did not want defendant or herself to get in trouble. She testified that defendant "told [her] that we would get in trouble. It would hurt the family" and for her "not to tell mom because it would hurt the family, he would get in trouble, we would get in trouble."

### C. THE STATE AGENCY ORDER EVIDENCE

The prosecutor, during her direct examination of the victim's mother, elicited the following testimony:

*Q.* Were you aware that there was an order that he was not to—an agency order that he was not to be with any children?

*A.* Yes, I was.

*Q.* Did you honor that order?

*A.* No, I didn't.

*Q.* So, you all—you ignored it as well.

*A.* Yes, I did.

*Q.* Did you let him have contact with [the victim] and [two of her siblings]?

*A.* Yes, I did.

*Q.* Do you regret that decision?

*A.* Yes, I do.[3]

## II. THE FOUR-LEGGED TEST IN *VANDERVLIET*

The majority in *VanderVliet* set out a four-legged test for the consideration of other-acts evidence under MRE 404(b):[4]

> First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury.[5] [*Vander-Vliet, supra* at 55.]

---

[3] Joseph Keller indicated on direct examination by the prosecutor that defendant told him that defendant about thirty-five times knowingly violated a state order that he was not to have any contact with children.

[4] MRE 404(b)(1) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

[5] The *VanderVliet* majority in its n 2 cited *Huddleston v United States*, 485 US 681; 108 S Ct 1496; 99 L Ed 2d 771 (1988). There, the United States Supreme Court adopted a similar rule relating to other-acts evidence:

> [F]irst, from the requirement of Rule 404(b) that the evidence be offered for a proper purpose; second, from the relevancy requirement of Rule 402—as enforced through Rule 104(b); third, from the assessment the trial court must make under Rule 403 to determine whether the probative value of the similar acts evidence is substantially outweighed by its potential for unfair prejudice, see Advisory Committee's Notes on Fed Rule Evid 404(b), 28 USC App, p 691;

### III. PROPER PURPOSE

#### A. INTRODUCTION

The first leg of the *VanderVliet* inquiry is whether the evidence was offered for a proper purpose under Rule 404(b). The most obvious question with respect to this first leg is whether the prosecutor must have articulated this proper purpose at trial or whether it is sufficient for the prosecutor, on appeal, to recite purposes that were articulable, but perhaps were not articulated, at trial. I would conclude that the former test is the one that we must apply: the prosecutor must have articulated a proper purpose at trial. In *VanderVliet, supra* at 74, the Court stated one of the requirements for the admission of other-acts evidence:

> The evidence must be relevant to an issue other than propensity under Rule 404(b), to "protect[] against the introduction of extrinsic act evidence when that evidence is offered *solely* to prove character." [*Huddleston v United States,* 485 US 681,] 687; [108 S Ct 1496; 99 L Ed 2d 771 (1988).] (Emphasis added.) Stated otherwise, *the prosecutor must offer* the other acts evidence under something other than a character to conduct theory. [First emphasis in *VanderVliet;* second emphasis added.]

Thus, under *VanderVliet,* the prosecutor has the burden of articulating a proper nonpropensity ground for the admission of other-acts evidence, and it is not

---

S Rep No 93-1277 at 25; and fourth, from the Federal Rule of Evidence 105, which provides that the trial court shall, upon request, instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted. [*Huddleston, supra* at 691-692.]

enough that a nonpropensity theory may exist if it is not articulated or relied on by the prosecution at trial.[6]

### B. THE PRIOR-UNCHARGED-ACTS EVIDENCE

#### (1) THE OFFER OF TESTIMONY AND THE ARTICULATED REASONS

A pretrial hearing was conducted regarding the admissibility of the prior-uncharged-acts evidence from the victim's half-sister. The prosecutor provided the following rationale for the admission of this evidence:

> Your Honor, we believe that this is offered for a proper purpose, to show in the case at-hand what the Defendant's motive was, to show what his intent was, and to show that he was acting with an absence of any type of mistake. I believe that it is—those are recognized proper purposes, and I believe that under *VanderVliet* the Court is to—to look more as an—an—inclusively as to it—as opposed to excluding evidence.

The prosecutor then went on to discuss the second leg of *VanderVliet*[7] and stated:

---

[6] The *Starr* Court quoted from *VanderVliet, supra* at 55, to the effect that one requirement for the admission of other-acts evidence is "that the evidence be *offered* for a proper purpose under Rule 404(b)." *Starr, supra* at 496 (emphasis added). This further supports a conclusion that the prosecution must have "articulated" a theory to support admissibility of other-acts evidence on a noncharacter theory, as opposed to it being sufficient if there merely is an "articulable" theory. The *Crawford* Court similarly stated that "the first question that must be addressed is whether the prosecutor *has articulated* a proper noncharacter purpose for admission of the defendant's prior drug conviction." *Crawford, supra* at 385-386 (emphasis added).

[7] I recognize that I am conflating the prosecutor's separate statements with respect to the first and the second legs of *VanderVliet.* I believe the most rational interpretation of the prosecutor's remarks is that in her comments regarding the second leg, which deals with the closely related

In this case, Your Honor, and the times that we live in people don't believe that adults can be sexually attracted to those who are younger, to those who are children.

Your Honor, this evidence is relevant to show that the Defendant, or to show that this is not necessarily an is— isolated incident, to show that the Defendant was not, in some way, taking care of his daughter, to show that, in some way, he intended to have sexual relations with a 14-year-old[8] who happened to be related to him.

In a later colloquy with the trial court and defense counsel, the prosecutor added another purpose: bolstering the credibility of the as-yet-to-be-offered testimony of the victim:

However, the credibility of this witness will be on the stand as well, as Mr. Turpel has been pointing out, whether they believe her [the victim] or whether they don't believe her. And, in looking at that credibility, Your Honor, we have to look at whether or not the jury can believe, that a father could—could perform sexual acts upon a daughter. And in this case, Your Honor, presenting evidence of a—of a prior act, which happens to be similar, goes to the credibility of this witness, it goes to the intent of the Defendant who was intending to have a sexual act, that it wasn't some other type of touching, because at—at this point, Judge, he's saying he wasn't there but there was some typ—sy—type of misunderstanding.[9]

---

question of relevancy, she was actually advancing additional proper purposes for admitting the prior-uncharged-acts evidence under the first leg.

[8] As indicated in n 2, the victim was actually aged thirteen at the time of the alleged sexual assault.

[9] The prosecutor later recapitulated her argument:

I think Vander[V]liet is very clear, Your Honor, that it's not limited to the five purposes that we all learned in law school: Motive, intent, scheme, plan or design. Judge, Vander[V]liet makes it very clear that anything that's logically relevant comes in. Credibility is logically relevant, Your Honor. Credibility of a witness is logically relevant. Motive of the Defendant is logically relevant, Your Honor. It's a proper purpose. The—that—that happens to come under

To my mind, these statements, when taken together, constitute five asserted purposes for admitting the prior-acts evidence in this case: (1) to show defendant's motive during the charged conduct (in some unspecified way); (2) to show defendant's intent with regard to the charged conduct (i.e., that "in some way, he intended to have sexual relations" with his daughter); (3) to show an absence of mistake with regard to the charged conduct (i.e., that he "was not, in some way, taking care of his daughter" and that there was not some type of misunderstanding); (4) to show that it is possible for an adult to be sexually attracted to children (i.e., that "adults can be sexually attracted to those who are younger, to those who are children"); and (5) to bolster the credibility of the victim's testimony (i.e., to make it more probable that the jury would believe her).[10]

---

the—the—the way we were raised, or the way that we were all legally trained. However, *Vander[V]liet* has broken it wide open, Your Honor, if there is a proper purpose. And, that's the only reason. That's the—the—wording that *Vander[V]liet* uses. It doesn't—and it—the—the rule itself also expands it to the five reasons plus, whatever the Court—within the Court's discretion what is a proper purpose. In this case, admittedly, Judge, as—as I'm thinking about it, and as the argument is coming, since I did not know exactly where everything was going to be coming from, credibility also becomes a purpose. We're—we're well before trial, Your Honor, so that this is—the appropriate time to be adding it. Better now than in the middle of trial, even though 404B allows for this type of notice within—in—and within the course of a trial. So, we're well before that, Your Honor. We have plenty of notice to be doing this.

There are—what I'm basically saying, Your Honor, there are numerous reasons, outside of trying to show anyone's bad character, why this evidence is not only probative but relevant, and that—that there is a proper purpose to bring this type of evidence into this case.

[10] On appeal, the prosecutor also advances several additional theories: "modus operandi" (e.g., "Defendant's modus operandi was one of the primary reasons [the prosecutor] offered other acts evidence in Defendant's

### (2) THE TRIAL COURT'S RULINGS

The trial court based its tentative decision at the pretrial hearing directly on *VanderVliet*:

> The most recent case of *People v Vander[V]liet*, 444 Michigan 52, requires that the Court use a balancing test in analyzing whether evidence of other acts are admissible.
>
> In this case the allegation is that the Defendant engaged in sexual penetration with his daughter. There is an allegation that the Defendant engaged in similar acts with a stepdaughter on an earlier—at—at an earlier time.

---

case."), "corpus delecti" (e.g., "When other crimes are offered to prove that the charged act took place, this is sometimes called the 'corpus delecti' issue and is a clearly permissible purpose for the other acts evidence, although it is not expressly listed in the rule."), and "corroboration" (e.g., "The other acts evidence was admissible for the purposes of corroborating [the victim's] testimony."). The prosecutor cites *People v Engelman*, 434 Mich 204, 223, n 27; 453 NW2d 656 (1990), for the proposition that the failure to advance the correct theory for admission of other-acts evidence does not justify automatic reversal of a conviction. I first note that *Engelman*, in turn, cites *Templin v Nottawa Twp*, 362 Mich 257; 106 NW2d 825 (1961), and *Plec v Liquor Control Comm*, 322 Mich 691; 34 NW2d 524 (1948), for its observation that the prosecutor's "failure to advance the correct theory at that time [the time of the trial] is not alone grounds for reversal; likewise, the trial court's own misidentification of the grounds for admission of the evidence in and of itself does not merit overturning its decision to allow it." *Templin*, however, does not deal with an evidentiary rule and stands only for the time-honored proposition that a reviewing court will not disturb the conclusions of a lower court that reached the right conclusion regardless of the reasons it cites for reaching that conclusion. *Templin, supra* at 261. The decision in *Plec* rests on the same basis; indeed, the *Plec* Court cited *McNair v State Hwy Dep't*, 305 Mich 181, 188; 9 NW 52 (1943), to the effect that, "[W]here the trial judge reaches the right conclusion in deciding a case, we do not disturb the result attained even though other reasons should have been assigned." *Plec, supra* at 696. At best, therefore, it seems to me that *Engelman* stands for the proposition that the fact that a trial court may have erred in assigning a proper purpose for accepting the other acts testimony is not fatal on appeal, *if a proper purpose existed and was articulated at trial.* I secondly note that, quite obviously, *Engelman* predated the Court's adoption of the *VanderVliet* four-legged test and therefore should not be interpreted as speaking definitively to the question of an "articulated" versus an "articulable" purpose with respect to the first leg.

The defense in this case is a general denial. In other words, there—the Defendant is saying it never happened.

In *Vander[V]liet* we had a general denial. *Vander[V]liet* was a case involving criminal sexual conduct. There the Supreme Court held that sexual purpose is an element of— of an offense involving criminal sexual conduct[11], and that the testimony, if it is sufficiently similar to the issue of intent, is—is admissible. I think that as a tentative ruling the Court will hold that that evidence can be used by the People.

Referring again to *VanderVliet*, the trial court affirmed its tentative pretrial decision at the trial itself:

There are, essentially, four facets of that case that are an attempt to guide Trial Courts in deciding whether 404 (B) testimony should be received in a—particularly a criminal trial, concerning other bad acts, so to speak.

Obviously, 404 (B) (1) allows evidence of other wrongdoings to show such purposes as scheme, plan or system in doing an act, or absence of mistake or accident when the same is material.

Here, there is a general denial that criminal sexual conduct in the first degree ever occurred.

In deciding whether or not to allow the testimony of [the half-sister] I must first determine, under *Vander[V]liet*, whether the other acts evidence is offered for a proper purpose under 404(B).

Here, *I think the evidence tends to show that the Defendant has committed other wrongful acts involving a child, or a juvenile, who was a member of the same household,*

---

[11] This was an overstatement. In *VanderVliet*, the defendant was charged with several counts of *second-degree* criminal sexual conduct. *VanderVliet, supra* at 54-55. With regard to some of the charges, the Court observed that "[s]exual purpose is an element of the offense." *Id.* at 85. However, defendant in this case was charged with, and convicted of, *first-degree* criminal sexual conduct (CSC I). Proof that a defendant "intended to seek sexual arousal or gratification" is *not* an element of CSC I. *People v Lemons*, 454 Mich 234, 253-254; 562 NW2d 447 (1997).

*which is the exact situation we have in the allegations in this trial.*

Furthermore, we have the Defendant indicating that that conduct should not be reported for fear of breaking up the family or getting people in trouble. And, I think that is all consistent with the—the way in which he is alleged to have engaged in sex or sexual penetration in this case.

Therefore, I think it is indeed, relevant, particularly where the Defense is a general denial.

The—therefore, I believe it is offered for a proper purpose. [Emphasis added.]

### (3) *SABIN I*

It was upon the above-emphasized portion of the trial court's ruling that this Court seized in its prior ruling in this case, stating, "We read the trial court's ruling as allowing the admission of this evidence for the purpose of establishing defendant's propensity to sexually abuse his children." *People v Sabin,* 223 Mich App 530, 535; 566 NW2d 677 (1997) (*Sabin I*). I believe this to have been mistaken, for several reasons. First, I am not sure that the *Sabin I* selection of the emphasized portion did overall justice to the trial court's reasoning. Certainly, the trial court articulated other purposes beside propensity (e.g., intent, modus operandi) for admitting the prior-uncharged-acts testimony.

In any event, however, I believe that the plain language of the first leg of the *VanderVliet* test refers to the articulated purpose or purposes for which *the prosecutor* offered the evidence, not the purpose or purposes that the *trial court* articulated when accepting the evidence. As discussed above in n 10, *ante* at 19-20, it seems to me that *People v Engelman,* 434 Mich 204; 453 NW2d 656 (1990)—to which the *VanderVliet* opinion refers several times with obvious

approval—holds that the fact that a trial court may have erred in assigning a proper purpose for accepting the other-acts testimony is not fatal on appeal, *if a proper purpose existed and was articulated at trial.* To me, then, the essential issue with respect to the first leg of the *VanderVliet* test is whether the prosecutor at trial articulated a proper purpose for admitting the prior-uncharged-acts testimony.

#### (4) *SABIN II*

The majority opinion today (*Sabin II*) repeats *Sabin I's* quotation of the trial court's rationale regarding the first leg of the *VanderVliet* test and cites verbatim *Sabin I's* finding that there was little physical similarity between the repeated acts of oral molestation that the half-sister described and the violent, forcible vaginal rape that the victim alleged. *Sabin II, ante* at ___. Thus, I do not believe that *Sabin II* directly addresses the first leg of *Vander-Vliet* in light of *Starr* and *Crawford.*

#### (5) *STARR*

Standing alone, *Starr* justifies a finding that the prosecutor articulated a proper purpose under the first leg of *VanderVliet.* The majority opinion here correctly states the essential facts of *Starr*, but I would emphasize the eerie similarity between those facts and the facts of this case. In *Starr*, the defendant was charged with two counts of first-degree criminal sexual conduct;[12] here, similarly, defendant was charged with first-degree criminal sexual conduct. In *Starr*, the victim was the defendant's nine-year-old

---

[12] The defendant in *Starr* was also charged with one count of second-degree criminal sexual conduct. *Starr, supra* at 492.

adopted daughter;[13] here, the victim is defendant's daughter who was thirteen years old at the time of the alleged assault. In *Starr*, the prosecutor sought to admit testimony from the defendant's half-sister concerning uncharged sexual conduct that commenced some seventeen years before the charged conduct and continued for a fourteen-year period;[14] here, the prosecutor sought to admit testimony from defendant's stepdaughter concerning uncharged sexual conduct that commenced some sixteen years before the charged conduct and continued for an eight-year period. In *Starr*, the defendant entered a general denial with respect to the charges;[15] here, defendant offered a similar general denial.[16]

The important similarity, however, is in the purposes articulated by the prosecutor at trial for the admission of testimony relating to the prior uncharged acts. In *Starr*, the majority observed that the prosecutor offered the testimony for a "myriad of reasons;"[17] here, similarly, the prosecutor articulated a number of purposes for offering the testimony. The majority in *Starr* apparently found that *all* of the prosecutor's articulated purposes were proper.[18] Of

---

[13] *Id.* at 491.

[14] *Id.* at 492.

[15] *Id.* at 493.

[16] I am not, however, implying that *Starr* is identical in every detail to the situation in this case. For example, in *Starr* the defendant was the main witness for the defense, *id.* at 493, while here defendant did not testify.

[17] *Id.* at 500.

[18] *Id.* at 501:

  These were legitimate, material, and contested grounds on which to offer the evidence because, in this case, defendant entered a general denial. Defendant's general denial placed all elements of his csc charges at issue. See *People v VanderVliet*, *supra* at 78.

the grounds articulated by the prosecutor in *Starr*, at least two (to show defendant's intent with regard to the charged conduct and to show an absence of mistake with regard to the charged conduct) were also articulated by the prosecutor in this case. On the basis of the majority opinion in *Starr*, I would find that at least these purposes were both proper and properly articulated,[19] thus satisfying the first leg of *VanderVliet*.

### (6) *CRAWFORD*

The question becomes, then, whether such a conclusion remains valid in light of *Crawford*. There, the prosecutor articulated two theories of admissibility to support the admission of evidence of the defendant's 1988 drug conviction: the first was to show that the defendant knew that cocaine was hidden in the dashboard of his car and the second was that he intended to deliver the drugs in 1992. *Crawford, supra* at 386-387. The majority in *Crawford* commented:

"Knowledge" and "intent" are indeed included among MRE 404(B)'s laundry list of proper purposes. However, a common pitfall in MRE 404(b) cases is the trial courts' tendency to admit the prior misconduct evidence merely because it has been "offered" for one of the rule's enumerated proper purposes. Mechanical recitation of "knowledge, intent, absence of mistake, etc.," without explaining how the evidence relates to the recited purposes, is insufficient to justify admission under MRE 404(b). If it were, the pros-

---

[19] I recognize that the transcript citations show that the prosecutor occasionally misspoke, often repeated herself, and may have otherwise been less than clear in what she was saying. In large part, *any* transcript of *any* oral argument will always show flaws and gaps in wording, syntax, and logic. These common flaws do not, in my opinion, support a conclusion that the prosecutor failed to articulate a proper purpose for the admission of testimony relating to the prior uncharged acts.

ecutor could routinely admit character evidence by simply
calling it something else. Relevance is not an inherent char-
acteristic, *Huddleston, supra* at 689, nor are prior bad acts
intrinsically relevant to "motive, opportunity, intent, prepa-
ration, plan," etc. Relevance is a relationship between the
evidence and a material fact at issue that must be demon-
strated by reasonable inferences that make a material fact
at issue more probable or less probable than it would be
without the evidence. *United States v Sampson*, 980 F2d
883, 888 (CA 3, 1992). In order to ensure the defendant's
right to a fair trial, courts must vigilantly weed out charac-
ter evidence that is disguised as something else. The logical
relationship between the proffered evidence and the ulti-
mate fact to be proven must be closely scrutinized.[7]

---

[7] Weinstein notes that although "courts on occasion have
admitted other-acts evidence almost automatically, without
any real analysis, if they find it fits within one of the catego-
ries specified in Rule 404(b). . . . Rule 404(b) does not
authorize automatic admission, and the proponent of the
evidence must demonstrate its relevance." 2 Weinstein, Fed-
eral Evidence, § 404.20[3], pp 404-41 to 404-42.

[*Crawford, supra* at 387-388.[20]]

---

[20] One might have expected Justice BOYLE, who authored *VanderVliet*,
to point out that the majority in *Crawford* here appeared to be confusing
the first leg of *VanderVliet*, which deals with proper purpose, with the
second leg, which deals with relevance. However, Justice BOYLE stated in
her vigorous dissent in *Crawford* that "[t]he majority's analysis appears to
resurrect the rejected proposition that, unless the prosecutor argues the
correct theory, the evidence is inadmissible." *Crawford, supra* at 403
(BOYLE, J., dissenting). In her n 5, Justice BOYLE further observed that
"[t]he majority's citation of the holding in [*Sampson, supra*], *ante* at 386,
n 6, supports this assumption, while failing to acknowledge that the
method of analysis employed in *Sampson* was rejected in *VanderVliet*."
*Crawford, supra* at 403, n 5 (BOYLE, J., dissenting). As is obvious from my
analysis above, I do not read *VanderVliet* as relieving the prosecutor of
the burden of articulating a proper or "correct" purpose or "theory" for
the admission of testimony relating to the prior uncharged acts nor do I
find any explicit reference in *VanderVliet* to the method of analysis
employed in *Sampson*. I do note the following passage in *VanderVliet* that
provides some support for the view Justice BOYLE articulates in n 5 in her
dissent in *Crawford:*

Did the prosecutor here attempt to obtain the admission of character or propensity evidence merely by calling it something else? I think not, for two reasons. First, with respect to the two purposes that were articulated both by the prosecutor here and by the prosecutor in *Starr* (to show defendant's intent with regard to the charged conduct and to show an absence of mistake with regard to the charged conduct), the prosecutor here related these purposes to something other than defendant's character or propensities. While the prosecutor could have been more explicit and more detailed, nevertheless her articulated purposes[21] related to things "other than a character to conduct theory." *VanderVliet, supra* at 74.

Secondly—and I recognize that the prosecutor in *Starr* did not articulate these purposes—the prosecutor here articulated additional, and in my view proper, purposes for the admission of testimony relat-

---

The evidence must be relevant to an issue other than propensity under Rule 404(b), to "protect[ ] against the introduction of extrinsic act evidence when that evidence is offered *solely* to prove character." [*Huddleston, supra* at 687.] (Emphasis added.) Stated otherwise, the prosecutor must offer the other acts evidence under something other than a character to conduct theory. [*VanderVliet, supra* at 74.]

More broadly, I again observe that it is not the task of an intermediate appellate court to attempt to reconcile the strikingly contradictory views of members of the state's highest Court. Self-evidently, such a reconciliation must come, if it is to come at all, from that Court itself.

[21] I.e., with respect to the former, that defendant "in some way. . . intended to have sexual relations" with his daughter and, with respect to the latter, that defendant "was not, in some way, taking care of his daughter" and that there was not some type of misunderstanding.

ing to the prior uncharged acts: to show that it is possible for an adult to be sexually attracted to children and to bolster the credibility[22] of the victim's testimony.[23] In sum, whether or not I am correct in my conclusion that under *VanderVliet, Starr,* and *Crawford* the prosecutor has the burden of articulating at trial a proper noncharacter purpose for the admission of testimony relating to prior uncharged acts, I believe—although I certainly concede that it is a close question—that the prosecutor articulated, and explained, sufficiently proper purposes here, even when considered in light of the arguably more stringent language in *Crawford.*

### C. THE STATE AGENCY ORDER EVIDENCE

#### (1) THE OFFER OF TESTIMONY AND THE ARTICULATED REASONS

The prosecutor gave the following rationale for admitting the state agency order evidence as relevant to explain aspects of the victim's conduct:

---

[22] *Engelman* certainly suggests that evidence that was corroborative of the victim's testimony and therefore rehabilitated the victim's credibility can come in as other-acts evidence:

> We do not mean to suggest, however, that under existing precedent other acts evidence which is corroborative of the victim's testimony must necessarily be excluded. Such evidence may be admissible, for example, to rehabilitate a witness after a cross-examination placing his credibility in issue. [*Engelman, supra* at 222, n 26.]

[23] In my view, the prosecutor did not articulate a proper purpose when she, without further specificity, stated that she was offering the prior uncharged acts testimony to show defendant's motive. The prosecutor never returned to this point in her subsequent arguments regarding admissibility and certainly failed to articulate her basis for this purpose in her initial argument in anything approaching a clear and logical manner.

The matter that I would like to address, Your Honor, is that at the time these offenses were committed Mr. Sabin was on parole. He had been sent to prison, and was in prison for much of [the victim's] life.

Your Honor, the fact that he was on parole, and the fact that he was out of the home, is an integral part of this case. It's an integral part of the People's case-in-chief.

In addition, Your Honor, there was also a—a secret that the family kept, that the Defendant, as part of his parole condition was not to be around children under the age of 17, yet he was allowed into the home, and he was around children under the age of 17; [the victim] being well under the age of 17 at the time that the Defendant was having contact with her.

Your Honor, it was a—again, it's also an integral part of the People's case-in-chief.

Your Honor, I would propose that in—and, obviously, I will not be using the word, Parole. I will not be using the word that he was on—that he had been convicted of a prior offense of this nature. However, Your Honor, because it is an integral part, the terminology that I had proposed, and I have also discussed with the vic—with the witnesses in this case, is that in terms of him having gone to prison it would be that he went away, that they had no contact with him, and that in March, of 1994 he came back.

As to the condition of parole, that he was to have no contact with anyone under the age of 17, the—the language that I would propose, Your Honor, is that there be—that there was a State agency which ordered him not to have contact with children, and not being any more specific as to what ag—State agency and why.

*The Court*: You indicate that this is an integral part of your case-in-chief. What—I—I think you need to place on the record an enlargement of that conclusion.

*Ms. Nickel* [the prosecutor]: Yes, Your Honor. The reason it is such an integral part of the case-in-chief, Your Honor, is that the—there was not immediate outcry, and that [the victim] continued to live in a circumstance where this Defendant was.

She also ran away, Your Honor. And, because she ran away there will be some question as to about why she would do that.

This is a young woman who grew up without a father, Your Honor. She was very, very excited about having a father in her home again.

Her mother . . . was very excited about having a man back in the home, or having—especially having the children's father in the home.

[The victim] was about 3 years old at the time the Defendant went away, had never really known him.

Therefore, Your Honor, it's—it goes to explaining why she was acting the way she was, why—why she wanted him in the home, and why she was hesitant and scared of saying anything to anybody, knowing that he might be sent away again.

In terms of having—not being able to talk about him being in the home, and the fact that he was not to be in the home, that goes directly to, again, Your Honor, to the reason for not having immediate outcry and she—and for running away from home. If she told someone then a lot of people would get in trouble, and she was very afraid of bringing that—in fact, the Defendant threatened her with that, saying that. If you tell anybody I'm gonna have to go to prison. They're all gonna hate you, and it's your fault.

Therefore, Your Honor, if the jury has some explanation that the Defendant was not to have any type of contact with them that there would be a reason for her not immediately going to the police or going to her mother or going to somebody because there had been this whole—this whole secret that the family had; and, therefore, explains, to some degree, why she acted the way she did.

To my mind, these statements, when taken together, constitute two separate but closely related articulated purposes for the admission of testimony related to the state agency order: (1) to show the reason that the victim did not make an immediate outcry after the alleged assault and (2) to show that this reason was

the victim's fear that such an outcry would result in a breakup of the family because it would reveal that defendant had violated the state agency order.[24] I recognize that these articulated reasons do not fall within MRE 404(b)'s "laundry list" of proper purposes; rather, they are relevant to the reasons for the victim's failure to act immediately after the alleged assault and therefore to her credibility. As I noted in n 22, *Engelman* certainly suggests that evidence that rehabilitated the victim's credibility can come in as other-acts evidence. *Engelman, supra* at 222-223, n 26.[25]

### (2) THE TRIAL COURT'S RULING

The trial court ruled as follows with regard to the prosecutor's motion:

> To the extent, Ms. Nickel, that your request is a motion, it—it is granted.

---

[24] On appeal, the prosecutor advances another theory: "res gestae" (e.g., "[d]efendant's violation of the State agency order constituted part of the res gestae, the complete story, of Defendant's offense" and "[t]rial courts have routinely permitted evidence of a defendant's 'other acts' when those acts constituted part of the res gestae of the charged offense"). As I have noted above, I believe that a proper purpose for the admission of other-acts evidence must be articulated by the prosecutor at trial and not for the first time on appeal.

[25] The prosecutor notes on appeal that, while defendant opposed the motion to admit the evidence pertaining to the state agency order, he did not argue that it violated MRE 404(b), nor did he request the cautionary instruction. The prosecutor, citing *People v Winchell*, 171 Mich App 662, 665; 430 NW2d 812 (1988), argues that an objection on one ground at trial is insufficient to preserve an argument on appeal. Citing *People v Grant*, 445 Mich 535, 546; 520 NW2d 123 (1994), the prosecutor further argues that defendant's failure to specifically object, under the terms of MRE 404(b), means that the issue was forfeited for appellate review, absent compelling or extraordinary circumstances. Because I would conclude that the evidence with respect to the state agency order was offered for a proper purpose, I find it unnecessary to reach these arguments.

*Ms. Nickel:* Okay.

*The Court:* And, you will be allowed, through your opening statement, or your witnesses, to explain, within the parameters you placed on the record, the situation that existed.

*Ms. Nickel:* Thank you, Your Honor.

*The Court:* And, I—I. assume you will inform your witnesses appropriately.

*Ms. Nickel:* I have already informed them, Judge, and I will remind them before either of them takes the stand.[26]

### (3) *SABIN I*

*Sabin I* found that the trial court's allowance of the testimony of the victim's mother that after a ten-year absence, defendant returned to the home in contravention of the state agency order was error requiring reversal on the ground that the unfair prejudice emanating from this evidence far outweighed its probative value,[27] that the evidence was of marginal relevance at best,[28] and that the evidence was relevant, if at all, to a collateral matter.[29] Thus, *Sabin I* did not directly address the issue of proper purpose under the first leg of the *VanderVliet* test.

### (4) *SABIN II*

*Sabin II* repeats the previous holding that the evidence was not relevant to any issues in the case and emphasizes that the probative value, if any, of this evidence was *substantially* outweighed by the danger

---

[26] The prosecutor states that, without discussing evidence rules, "[I]t appears the trial judge applied MRE 401 and 402." I see no support in the record for this assumption and I analyze this issue under MRE 404(b).

[27] *Sabin I, supra* at 538.

[28] *Id.*

[29] *Id.* at 539.

of unfair prejudice. *Sabin II, ante* at 11. I think it fair to say, therefore, that *Sabin II* does not directly address the issue of proper purpose under the first leg of the *VanderVliet* test.

### (5) STARR

In *Starr,* one of the theories that the defense presented was that the victim's mother fabricated the allegations of sexual abuse to prevent the defendant from having any future contact with his adopted daughter; indeed, the defense counsel in *Starr* claimed that the victim's mother "planted" the allegations in the victim's mind solely to retaliate against the defendant. To refute the claim that the allegations were fabricated, the prosecutor introduced the victim's half-sister, who testified, during cross-examination that the victim did not reveal the abuse until the victim was directly asked about it by her mother, two years after the abuse occurred. *Starr, supra* at 501, n 11. The majority in *Starr* concluded:

> Absent the half-sister's testimony, the prosecutor could not effectively rebut defendant's claim that the charges were groundless and fabricated by her mother. As in *People v VanderVliet,* we find that "[w]ithout such evidence, the factfinder would be left with a chronological and conceptual void regarding the events . . . ." *Id.* at 81, citing *United States v Ostrowsky,* 501 F2d 318, 322 (CA 7, 1994). Thus, we find the proffered evidence to be probative to refute the defendant's allegations of fabrication of charges. [*Starr, supra* at 502.]

Here the circumstances are considerably different, but defense counsel did argue in his opening statement:

You're gonna hear about [the victim] running and hiding.
And, you're gonna have to determine if she ran and hid
because of this heinous act that she claims occurred, or if
she's run and hid a lot, that if she's out-of-control and she's
got motivation to lie, as to Mr. Sabin.

During closing arguments, defense counsel argued
that the victim resented defendant's discipline, had
trouble in school, lied to her mother, disliked defend-
ant, and contrived a "story of the rape." Arguably, and
somewhat similarly to the situation in *Starr*, here the
victim had a reason to delay in reporting the alleged
assault. Her reason was not, as defendant claimed, a
desire to avoid defendant's discipline. Rather, her rea-
son was her fear that a report of the alleged assault
would result in a breakup of the family because it
would reveal that defendant had violated the state
agency order.[30] In *Starr*, the majority determined that
the absence of an explanation with respect to the
delay by the victim in reporting the alleged assault
would cause a "chronological and conceptual void." I
would reach a similar determination here that the
absence of an explanation with regard to the delay by
this victim would also cause such a void.

### (6) *CRAWFORD*

While *Crawford* emphasized that it is the burden of
the prosecutor to articulate a proper reason for the
admission of the other-acts testimony, there is very
little similarity with respect to the reasons proffered

---

[30] I recognize that the existence of such a sophisticated motive by a
young child is more than a little suspect. This point, however, goes to the
credibility of the victim's testimony, an issue for the jury, and not to the
proper purpose of the prosecutor in seeking the admission of the state
agency order testimony.

by the prosecutor in that case to the reasons proffered by the prosecutor here for the admission of testimony regarding the state agency order. The question, then, under *Crawford*, is necessarily a broad one: did the prosecutor attempt to introduce improper character or propensity evidence (i.e., that defendant had a previous conviction for what was apparently a similar offense) by disguising it as something else (i.e., that defendant was subject to the state agency order, thereby explaining the victim's delay in making a report of the alleged assault)? While I again concede that it is a close question, I believe that the prosecutor articulated, and explained, a sufficiently proper purpose with respect to testimony about the state agency order and did not attempt to introduce improper character evidence relating to defendant's prior conviction through the guise of that testimony.

IV. RELEVANCE

A. INTRODUCTION

The second leg of the *VanderVliet* test is that the other-acts evidence must be relevant under MRE 402[31]

---

[31] MRE 402 provides:

All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Michigan, these rules, or other rules adopted by the Supreme Court. Evidence which is not relevant is not admissible.

MRE 401, in turn, describes relevant evidence:

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

as enforced through MRE 104(b).[32] *VanderVliet,*
*supra* at 55. *VanderVliet* set two requirements for the
admission of such evidence. First, the majority said,
the evidence must be "logically relevant," quoting
Imwinkelreid to the effect that " '[l]ogical relevance is
the "touchstone" of the admissability of uncharged
misconduct evidence.' "[33] *Id.* at 61. Second, the major-
ity said, the evidence must be "legally relevant."
Indeed, the majority said, MRE 404 is a rule of legal
relevance, "limiting the use of evidence that is logi-
cally relevant." *Id.* at 61-62. The majority went on to
say:

> On its face, Rule 404 limits only one category of logically
> relevant evidence. As we explained in *Engelman, supra* at
> 212-213:
>
> "[o]nly one series of evidential hypotheses is forbidden in
> criminal cases by Rule 404: a man who commits a crime
> probably has a defect of character; a man with such a
> defect of character is more likely . . . to have committed the
> act in question." [Citing 2 Weinstein, Evidence, ¶ 404(8),
> p 404-52.]
>
> If the proponent's only theory of relevance is that the
> other act shows defendant's inclination to wrongdoing in
> general to prove that the defendant committed the conduct
> in question, the evidence is not admissible. [*VanderVliet,*
> *supra* at 62-63.]

Of necessity, then, the inquiry under the second leg of
*VanderVliet* very much resembles the inquiry under

---

[32] MRE 104(b) provides:

> *Relevancy conditioned on fact.* When the relevancy of evidence
> depends upon the fulfillment of a condition of fact, the court shall
> admit it upon, or subject to, the introduction of evidence sufficient
> to support a finding of the fulfillment of the condition.

[33] Imwinkelreid, Uncharged Misconduct Evidence, § 2:17, pp 45-46.

the first leg: The proponent must have a "theory" (one can just as easily say "purpose") of logical and legal relevance but if the only "theory" is that the other act shows a defendant's inclination "in general" to wrongdoing, then the evidence of that other act is not admissible.

### B. THE PRIOR-UNCHARGED-ACTS EVIDENCE

#### (1) THE PROSECUTOR'S THEORIES AND THE TRIAL COURT'S RULING

As noted above, at trial the prosecutor advanced at least five distinct "purposes" (one can just as easily say "theories") regarding the prior-uncharged-acts evidence. Within the broad language of *VanderVliet*, these theories would support the conclusion that this evidence was logically and legally relevant; at a minimum, I believe it fair to say, none of these purposes was to show defendant's inclination to wrongdoing in general.

I readily concede, however, that one of the trial court's articulated reasons for admitting the evidence (i.e., that the evidence tended to show that defendant "committed other wrongful acts involving a child, or a juvenile, who was a member of the same household, which is the exact situation we have in the allegations in this trial") certainly can be interpreted as expressing a character or propensity theory. I believe it logical, given the similarity in reasoning behind the first leg of *VanderVliet* and the second leg, to conclude that the key question relates to the prosecutor's theories when she sought admission of the prior-uncharged-acts evidence, rather than the trial court's

reasoning when it granted admission of that evidence. Again, it seems to me that one can rationally extend the holding in *Engelman* to embrace the concept that, under *VanderVliet*, the prosecutor here articulated proper theories of logical and legal relevance.

### (2) *SABIN I*

*Sabin I* emphasized the prosecutor's argument that the prior-uncharged-acts evidence was admissible to prove defendant's common scheme, plan, or system, stating, "Typically, common-scheme evidence is admissible only where the defendant commits a series of crimes in a unique, regular, or regimented manner." *Sabin I, supra* at 535. *Sabin I* went on to find:

> In the present case, the only similarity in the conduct involved in the alleged incidents was that defendant told each alleged victim that telling anyone about the incident(s) would break up the family. There is little physical similarity between the repeated acts of oral molestation described by the victim's stepsister and the violent, forcible vaginal rape alleged by the victim. Nor does the testimony indicate that defendant committed the acts in the same room or had some unique, consistent pattern or scheme in approaching, overcoming, or treating his victims. . . . Defendant's alleged threat to each alleged victim not to tell or risk breaking up the family is relatively common in incestuous relationships. [*Id.* at 536.]

In my view, this strong reliance on a "similar acts" rationale overlooked contrary language in *Vander-Vliet*. There, the majority ruminated on the remarkable tenacity of the "similar acts" formulation of MRE 404(b), characterizing it as a hearty vine "in the garden of our jurisprudence." *VanderVliet, supra* at 72. More specifically, the majority stated:

The trial court and the Court of Appeals erroneously con-
cluded that Rule 404(b) relevance requires a high level of
similarity between the proffered other acts evidence and
the act charged. This approach misreads [*People v*]
*Golochowicz* [413 Mich 298; 319 NW2d 518 (1982)] *Engel-
man,* and other precedent of this Court. [*VanderVliet,
supra* at 70.[34]

While not specifically overruling *Golochowicz,* the
majority in *VanderVliet* stated:

Our focus in *Engelman* on logical relevance and the
inclusive view of other acts evidence, clarified and limited
the expansive reading of *Golochowicz* . . . endorsed by the
majority of the Courts of Appeals. *Golochowicz* is not the
general test for other acts evidence. [*Id.* at 72.][35]

---

[34] In n 23 of *VanderVliet,* the Court cited *People v Hall,* 433 Mich 573,
585-587; 447 NW2d 580 (1989) (BOYLE, J.), in which the lead plurality opin-
ion rejected the asserted similarity requirement where prior possession of
the weapon was used to prove identity:

MRE 404(b) is not limited solely to evidence of crimes, wrongs,
or acts that are *similar* to the charged offense. Rather, it is the
purpose that the proffered evidence will serve, that is, the basis for
its relevancy, that will dictate its requisite character.

\*     \*     \*

"Relevant evidence under Rule 404(b) should, therefore, not
always be excluded because it does not qualify under a similarity
requirement. Other bad acts disclosed by evidence would have to
be similar only if a basis for the relevance of the evidence is simi-
larity." In short, a similar act need not be proved in every instance
in which MRE 404(b) evidence is used. [Citations omitted.]

[35] See also *VanderVliet, supra* at 74:

In place of the four-pronged test of *Golochowicz,* we direct the
bench and bar to employ the evidentiary safeguards already pres-
ent in the Rules of Evidence, as identified by the unanimous United
States Supreme Court decision in *Huddleston.*

Simply put, as observed by Justice LEVIN in his separate opinion in *VanderVliet, supra* at 92, MRE 404(b) speaks of "other crimes, wrongs, or acts," not "similar acts."[36] Moreover, I observe that much of the talismanic value of a similarity analysis depends on the specificity of the description of the other acts. If, for example, one were to describe the prior uncharged acts of defendant here as engaging in sexual activities with a young, female member of his immediate family and thereafter cautioning the girl to keep quiet for fear of breaking up the family and then relate those prior uncharged acts to the charged act of engaging in sexual activity with a young female member of defendant's immediate family and thereafter cautioning the girl to keep quiet for fear of breaking up the family, one would find many points of comparison.

(3) *SABIN II*

*Sabin II* repeats the similarity requirement contained in *Sabin I* while adding the observation that "[t]he alleged acts of abuse ended more than ten years before trial and did not result in a charge or conviction." *Sabin II, ante* at 8-9. As noted by Justice BOYLE in her dissent in *Crawford, supra* at 434, the federal circuits follow a requirement that the other acts must

---

[36] As noted above, the prosecutor on appeal lists "corpus delecti" as one of the theories under which the prior-uncharged-acts evidence can be admitted. Corpus delecti evidence of other crimes may be offered to prove that the allegedly criminal act took place. 22 Wright & Graham, Federal Practice & Procedure, § 5239, p 460. This is clearly a permissible purpose for other-acts evidence, *Engelman, supra* at 215, particularly when, as here, the defendant's claim rests on his contention that the alleged criminal act never took place, *id.* at 217. In my view, however, the prosecutor did not articulate this theory at trial and cannot now use it on appeal.

be similar to and not too remote in time from the crime charged.[37] In *United States v Moore*, 98 F3d 347, 350 (CA 8, 1996), seven years was not too remote[38] while under *United States v Tomberlin*, 130 F3d 1318 (CA 8, 1997), a time span of about ten years was not too remote. Further, the fact that the other acts did not result in a charge or a conviction is not of consequence. In *Starr, supra* at 499, the majority stated that "MRE 404(b) specifically addresses the admissibility of *uncharged* conduct." (Emphasis in the original.)

### (4) *STARR*

When discussing the relevancy leg of *VanderVliet*, the majority in *Starr* made the following observation:

> Relevant evidence has two characteristics: it is "material" and has "probative force." MRE 401. To be "material," the evidence must be logically relevant to an issue or fact of consequence at trial. Any tendency to prove such a fact in issue constitutes sufficient probative value for purposes of relevancy. [*Starr, supra* at 497-498.]

Here, defendant entered a general denial; his basic position was that the alleged offense never occurred. As noted by the majority in *VanderVliet*:

---

[37] Citing *United States v Curry*, 79 F3d 1489, 1495 (CA 7, 1996); *United States v Wiley*, 29 F3d 345, 350 (CA 8, 1994); *United States v Rubio-Villareal*, 927 F2d 1495, 1503 (CA 9, 1991); *United States v Perez-Garcia*, 904 F2d 1534, 1539 (CA 11, 1990).

[38] The *Moore* court stated that "[p]roximity in time is one factor in determining the relevance of a prior conviction," but noted that there is no specific number of years after which prior bad acts are no longer relevant to intent. *Moore, supra* at 350.

> In Michigan, as in the federal courts, a plea of not guilty puts the prosecution to its proofs regarding all the elements of the crime charged. MCR 6.301(A); *People v Eddington*, 387 Mich 551; 198 NW2d 297 (1972). Thus, a tactical general denial by a defendant does not prevent the prosecutor from introducing other acts evidence at trial. . . .
>
> A general denial presumptively puts all elements of an offense at issue. While it does not automatically entitle the prosecutor to a pretrial ruling that the proffered evidence is admissible, the defense may not bar such evidence where it disputes the material fact of consequence to which the other acts evidence is relevant. In short, a defense need not be formally set up to create an issue clearly within the facts. 2 Wigmore, Evidence (Chadbourn rev), § 307, p 262. [*VanderVliet*, supra at 78-79.]

Here, defendant was charged with first-degree criminal sexual conduct, MCL 750.520b(1)(b); MSA 28.788(2)(1)(b) (CSC I). The elements of CSC I relevant here are (1) that sexual penetration occurred, (2) that the victim was at least thirteen but less that sixteen years of age, and (3) the perpetrator was related to the victim by blood or affinity to the fourth degree. If the prior-uncharged-acts evidence were logically and legally relevant to issues or facts in this matter, then, *in light of defendant's general denial*, the evidence was material and probative with respect to all elements of CSC I, because all elements—and, in particular, sexual penetration—were at issue. I would conclude, under *Starr*, that the prior-uncharged-acts evidence was logically and legally relevant.

### (5) *CRAWFORD*

Without citing *Starr*, the majority in *Crawford* repeated the observations that, pursuant to MRE 401,

evidence is relevant if the two components of materiality and probative value are met and that all elements of a criminal offense are "in issue" when a defendant enters a plea of not guilty. *Crawford, supra* at 388-389. However, the majority went on to say:

> The probative force inquiry asks whether the proffered evidence tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." This threshold is minimal: "any" tendency is sufficient probative force. In the context of prior acts evidence, however, MRE 404(b) stands as a sentinel at the gate: the proffered evidence truly must be probative of something *other* than the defendant's propensity to commit the crime. If the prosecutor fails to weave a logical thread linking the prior act to the ultimate inference, the evidence must be excluded, notwithstanding its logical relevance to character. [*Id.* at 389-390 (citations omitted; emphasis in original).]

Clearly, defendant's intent was not relevant at all to any of the elements of CSC I and his alleged sexual attraction to children was not directly relevant to any of the elements. They were, however, arguably part of a logical thread linking the prior uncharged acts to the ultimate inference: that the charged act—sexual penetration of a child between thirteen and sixteen where the child is related to the perpetrator—actually took place. The absence of mistake and the credibility of the victim's testimony were more directly related to the element of sexual penetration and were probative of something other than defendant's propensity to commit the crime. I would conclude, under *Crawford*, that the prior-uncharged-acts evidence continued to be logically and legally relevant.

### C. THE STATE AGENCY ORDER EVIDENCE

#### (1) THE PROSECUTOR'S THEORIES AND THE TRIAL COURT'S RULING

As noted above, at trial the prosecutor advanced two separate but closely related "purposes" (again, one can just as easily say "theories") regarding the state agency order evidence. Within the broad language of *VanderVliet*, these theories would support the conclusion that this evidence was logically and legally relevant. Neither of these purposes was to show defendant's inclination to wrongdoing in general. The trial court granted the prosecutor's motion without articulating any specific reasons for doing so. Thus, unlike the situation with the prior-uncharged-acts evidence, the trial court did not articulate an arguably improper purpose for admitting the evidence.

#### (2) *SABIN I*

*Sabin I* did not directly focus on the relevancy leg of the *VanderVliet* test when it ruled that the trial court should not have admitted the state agency order evidence. As noted above, however, *Sabin I* referred to the possible "marginal relevance" of this evidence and further commented that "[a]t trial, the reason for the delay was not at issue." *Sabin I, supra* at 538. This comment raises a rather intricate problem in retrospective reasoning. At the motion hearing, the prosecutor referred to the state agency order evidence as explaining why the victim "was scared of saying anything to anybody, knowing that he [defendant] might be sent away" and why there was no "immediate outcry." Defense counsel opposed the prosecutor's motion and stated:

> We are in opposition to that. We feel that this incident did not occur, and that this is—that there are other motivations for this story to come out.
>
> \*     \*     \*
>
> The other motivations being that Mr. Sabin was around to try to instill some discipline and take care of problems that [the victim] was otherwise ha—having; that [the victim] resented that, while initially she wanted her father in he wasn't the—the sop, maybe not the ideal she wanted. He saw that she was running amuck. Sought to instill certain discipline. And, in response to that, and in retaliation, she purported and fabricated these stories, as to this incident.

Clearly, then, defendant's theory was that the sexual penetration did not happen and that the victim fabricated a story of rape in retaliation for defendant's attempts to impose discipline on her. Importantly, however, defense counsel did not respond *at all* to the prosecutor's proffered reason that the existence of the state agency order explained the victim's delay in reporting the offense. The evidence of the state agency order was introduced mainly through the victim's mother; the mother's testimony came *before* that of the victim. Thus, at the time the state agency order evidence came in, the prosecutor had no way of knowing whether defense counsel, when cross-examining the victim, would attempt to attack her credibility through questions about the delay in reporting the offense.

In fact, defense counsel did not ask such questions, and the issue of the delay more or less evaporated in the balance of the trial. This Court has no way of knowing whether not raising the issue of delay was an oversight by defense counsel, on the one hand, or a shrewd tactical move, on the other. The fact

remains, however, that *at the time the bulk of the state agency order evidence came in*, the prosecutor did not know that, in the words of *Sabin I, supra* at 538, "[d]efense counsel [would not] argue or imply that the delay affected the victim's credibility."

I would conclude that the best—indeed the only— way of dealing with such a situation is to consider the relevance of the evidence at issue *at the time of its introduction*. If an issue evaporates during the course of a trial, it is not logical to conclude that the relevance of evidence concerning that issue was somehow retroactively poisoned by the fact of that evaporation.[39]

### (3) *SABIN II*

*Sabin II* compounds the problem, commenting that "[t]his evidence, which implied that defendant was on parole at the time of the present offense,[40] was not relevant to any issues in the case." *Sabin II, ante* at 11. This implies that the state agency order evidence

---

[39] To increase the complexity, I concede that a possible reason that defense counsel did not pursue the delay issue was that he knew questions about that issue might emphasize in the jury's mind the fact that the state agency order existed and thereby heighten the possibility that the jury might draw negative inferences from that fact. Thus, in the intricate chess game of trial tactics, the effect of the admission of the state agency order evidence may have caused some disadvantage to defendant in that his counsel was forced to veer away from a line of cross-examination that might have negatively affected the credibility of the victim's testimony. Meaningful analysis at this level of sophistication becomes almost an exercise in metaphysics, and I am content to observe that I know of no authority for the proposition that a potential negative effect on trial tactics reduces the relevance of other-acts evidence under MRE 404(b) pursuant to the *VanderVliet* test.

[40] I should note that I do not concede the accuracy of this assumption. The prosecutor and the trial court went to some lengths to avoid such an implication.

was *never* relevant. *At the time the state agency order evidence was introduced,* however, the evidence was very much relevant to a potential issue and one that only defense counsel knew—if he knew at all—would eventually evaporate. Only by an exercise of retroactive reasoning can a reviewing court conclude that the state agency order evidence was *never* relevant.

### (4) *STARR*

As noted above, *Starr* did not comment extensively on the relevancy leg of *VanderVliet*. The majority did say that "[a]ny tendency to prove such a fact in issue constitutes sufficient probative value for purposes of relevancy." *Starr, supra* at 497-498. The twist here, as I have emphasized above, is that the state agency order evidence, as an explanation for the victim's delay in reporting the offense, had only a *potential* tendency to prove a fact *that might be* at issue later in the trial. I cannot discern from the facts in *Starr* whether the testimony from the defendant's half-sister about the half-sister's two-year delay in reporting the abuse inflicted on her by the defendant came before or after the testimony of the victim or her mother. I can only comment that, as a general proposition, *Starr* can certainly be read as indicating that explanations regarding delays in reporting abuse are relevant.

### (5) *CRAWFORD*

*Crawford* repeats the unarguable proposition that the proffered other-acts evidence truly must be probative of something *other* than the defendant's propensity to commit the crime. *Crawford, supra* at 389-390. Unless one is willing to accept the proposition that the prosecutor successfully disguised the forbidden

wolf of propensity evidence—here, the fact that defendant was on parole—in the sheep's clothing of an explanation for the victim's delay in reporting the offense, clearly the state agency order was potentially probative of a potentially important fact *at the time it was introduced.* Given the care with which the prosecutor avoided *any* mention of defendant's parole status, I can see no basis on which to determine that she engaged in a charade. I would conclude, therefore, under *Crawford,* that the state agency order evidence continued to be logically and legally relevant.

V. PROBATIVE VALUE VERSUS UNFAIR PREJUDICE

A. INTRODUCTION

The third leg of *VanderVliet* requires that the probative value of the other-acts evidence be weighed against unfair prejudice; only when the probative value of the other-acts evidence is *substantially* outweighed by the *unfair* prejudice is that evidence excluded. In commenting on a similar formulation in *Golochowicz, supra,* the majority in *VanderVliet* stated that "[t]he fourth prong of *Golochowicz* is merely a restatement of the Rule 403 test applied to all evidence to determine its legal relevance." *Vander-Vliet, supra* at 71. MRE 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.[41]

---

[41] In n 26, the majority in *VanderVliet* commented:

> To be sure, the closer the evidence approaches the forbidden inferences of character to conduct, the higher the prejudicial

I read these statements as requiring a balancing of the probative value of the other-acts evidence, with particular emphasis on the clarity of the inference to noncharacter, against the factors of unfair prejudice, confusion of the issues, or misleading the jury.

### B. THE PRIOR-UNCHARGED-ACTS EVIDENCE

#### (1) THE PROSECUTOR'S ARGUMENTS AND THE TRIAL COURT'S RULING

At the motion hearing before trial, the prosecutor presented the following argument regarding the third leg of *VanderVliet:*

> The third prong of—of *Vander[V]liet*, Your Honor, would have us show that it—this evidence does not—does not substantially outweigh any—that the prejudice does not substantially outweigh any probative effect.
>
> Your Honor, the Court can temper that by any type of limiting instruction to show that this is offered merely for a limited purpose. It is not, in any way, offered to show that Mr. Sabin is a bad person, that he acted in bad character, that he added—in—acted in conformity with that bad character, but merely offered to show and to help the jury to explain that this type of a thing can happen and that this— and there is another young woman out there who with this same Defendant is explaining that it was not a mistake, that he had an intent to commit a sexual act upon her and that there was a motive to complete a sexual act upon a younger person that he was related to.

Defense counsel forcefully responded that CSC I is not a specific intent crime, that there was no issue con-

---

potential. Likewise, the more clear the inference to noncharacter, the higher the probative value, and the less likely the jury, aided by a proper instruction, will misconstrue the purpose or be swayed by passion. [*VanderVliet, supra* at 71-72, n 26.]

cerning mistake or intent and that "[i]f it happened as
[the victim] said, the Defendant did it, there's no mis-
take or intent." The prosecutor then attempted to
clarify her reference to mistake and intent by stating:

> Judge, and as to intent, I'm not saying that it is a specific
> intent crime, but the intent to commit a sexual act so that
> there is never—there is no confusion with the jury that
> maybe he was in the room with her but she misunderstood
> what he was doing. To show that there was intent to actu-
> ally commit a—sexual act, that there wasn't an absence of
> mistake that her father wasn't just wrestling with her.

The prosecutor then introduced an additional reason
for admitting the prior-uncharged-acts evidence,
credibility:

> [T]he credibility of this witness will be on the stand as
> well, as Mr. Turpel has been pointing out, whether they
> believe her or whether they don't believe her. And, in look-
> ing at that credibility, Your Honor, we have to look at
> whether or not the jury can believe, number one, that a
> father—could perform sexual acts upon a daughter. And in
> this case, Your Honor, presenting evidence of a—a prior
> act, which happens to be similar, goes to the credibility of
> this witness, it goes to the intent of the Defendant who was
> intending to have a sexual act, that it wasn't some other
> type of touching, because at—at this point, Judge, he's say-
> ing he wasn't there, but the jury may believe he was there
> but there was some type—sy—type of misunderstanding.

The trial court, in preliminarily ruling that it would
admit the evidence, premised its decision on *Vander-
Vliet*, but without going through the four legs of *Van-
derVliet* in any detail:

> In *Vander[V]liet* we had a general denial. *Vander[V]liet*
> was a case involving criminal sexual conduct. There, the
> Supreme Court held that sexual purpose is an element of

an—or an offense involving criminal sexual conduct, and that the testimony, if it is sufficiently similar to the issue of intent, is—is admissible.[42] I think that as a tentative ruling the Court will hold that evidence can be used by the People.

At trial, the trial court heard the testimony of the half-sister outside the presence of the jury. Defense counsel again argued that identity and lack of mistake were not issues and that any scheme or plan was "substantially different."

While the prosecutor mentioned the third leg of *VanderVliet*, she made no particular argument with regard to this leg, other than to contend that the evidence was "highly probative" and not outweighed by the prejudicial effect. The trial court was no more illuminating with respect to the third leg, placing its emphasis on the fact that it intended to issue a limiting instruction:

> Third, whether the probative value is substantially outweighed by unfair prejudice under MRE 403. I find that it—it is not, in light of the testimony presented here today, particularly because I will give a limiting instruction as provided for in *Vander[V]liet*, and I will give it not only in advance of [the half-sister's] testimony, but if so requested I will give a limiting instruction at the conclusion of the trial in my general instructions to the jury.

We are thus presented with the closest of questions. The prior-uncharged-acts evidence, while probative with respect to some of the matters identified by the prosecutor (i.e., absence of mistake or "misunderstanding" by the victim when she described the circumstances of defendant's conduct, the fact that it is

---

[42] Again, this is clearly an overstatement. See n 11, *ante* at 21.

possible for adults to be sexually attracted to young children, and the credibility of the victim's testimony) was certainly not probative with respect to other matters (i.e., intent, which is not an element of CSC I and therefore not at issue). The trial court, if it engaged in a weighing process, certainly did not articulate that process on the record.

### (2) *SABIN I*

*Sabin I* did not deal with the third leg of *VanderVliet* in any detail. However, *Sabin I* referred to *People v Jones*, 417 Mich 285; 335 NW2d 465 (1983):

> In *Jones*, . . . our Supreme Court reversed the defendant's conviction on the ground that error requiring reversal occurred as a result of the erroneous admission of testimony of the victim's sister concerning other acts. This evidence was held to be inadmissible for the purposes of bolstering the victim's credibility or overcoming the natural aversion the jury may have to believing that a father could sexually molest his own daughters. [*Sabin I, supra* at 535.]

With all due respect, I believe that *Sabin I* overstated the ruling in *Jones*. The Court's ruling there was that "[p]rior sexual acts between the defendant and persons other than the complainant are not part of the principal transaction."[43] *Jones, supra* at 289-290. The

---

[43] In n 1, the Court stated:

We recognize that there may be some circumstances when prior sexual acts between the defendant and others might be admissible under a similar acts analysis. See, *e.g., People v Oliphant*, 399 Mich 472; 250 NW2d 443 (1976). The prosecutor did not seek to base admission of the testimony on this ground, however, in this case, even though there may exist a basis for admitting the testimony of the complainant's sister on this ground. [*Jones, supra* at 290, n 1.]

Court thus limited the prior decisions in *People v DerMartzex*, 390 Mich 410; 213 NW2d 97 (1973) (evidence of a sexual act between the defendant and the victim that preceded the one charged was admissible when the defendant is a member of the victim's household), and *People v Hammer*, 98 Mich App 471; 296 NW2d 283 (1980) (when the victim's credibility was the principal issue confronting the jury, the testimony of the victim's female siblings that the defendant, their father, had also engaged in sexual misconduct with them on several occasions was admissible). The Court held that the "same victim" distinction articulated in *People v Coston*, 187 Mich 538, 546; 153 NW 831 (1915) (argument that the victim's sister could testify about an act of sexual intercourse between her and the defendant was "untenable"), and *People v Dean*, 253 Mich 434, 435; 235 NW 211 (1931) (distinguishing between the "previous acts of misconduct between the same parties" and the defendant's similar acts with others), was "sound." *Jones, supra* at 289.

The question, then, is whether this "same victim" distinction (i.e., that a victim may testify about prior uncharged acts *against her* by the defendant but that others who have experienced similar acts at the hands of the defendant may not testify) remains "sound." If the distinction is no longer observed, then it seems to me that other-acts testimony *can* be held to be admissible for the purposes of bolstering the victim's credibility or overcoming the natural aversion the jury may have to believing that a father could sexually molest his own daughters. As I discuss below, in

light of *Starr*, I believe that the Supreme Court no longer observes the "same victim" distinction.[44]

### (3) *SABIN II*

*Sabin II* does not pick up the "same victim" distinction that *Sabin I* emphasizes. Rather, it merely comments that *Starr* does not "alter, contradict, or expand the Court's earlier standards set forth in [*VanderVliet*], except to emphasize the third prong of *VanderVliet*." *Sabin II, ante* at ___. I can only observe that, while the former point is certainly correct, the latter point may be something of a considerable understatement.

### (4) *STARR*

At the outset, it seems immediately apparent to me that *Starr* did *not* follow the "same victim" distinction used by the *Jones* Court to decide that case. The other-acts testimony in *Starr* was by the victim's half-sister, *not* the victim. Thus, if the *Jones* "same victim" distinction remains viable, it does so in spite of *Starr*.

Further, in *Starr* the other-acts testimony came in to rebut the defendant's basic position that the charges against him were groundless. The majority in *Starr* commented:

---

[44] Although the rationale is thinner, I believe that the same conclusion could be reached on the basis of the facts in *VanderVliet*. There, two victims testified not only about charged acts by the defendant but also about prior uncharged acts as well. However, a *third* person, "John J," testified about prior sexual acts against him by the defendant. The majority commented, "This third case is uncharged at this time." *VanderVliet, supra* at 58. Without mentioning the "same victim" distinction in *Jones*, the majority ruled that John J's testimony was relevant but remanded for a trial court determination whether the probative value of that testimony was substantially outweighed by the risk of unfair prejudice. *VanderVliet, supra* at 81, n 38, 85.

> Absent the half-sister's testimony, the prosecutor could
> not effectively rebut defendant's claim that the charges
> were groundless and fabricated by her mother. As in *People
> v VanderVliet*, we find that "[w]ithout such evidence, the
> factfinder would be left with a chronological and concep-
> tual void regarding the events. . . ." Thus, we find the prof-
> fered evidence to be probative to refute the defendant's
> allegations of fabrication of charges. [*Starr*, *supra* at 502
> (citations omitted).]

Here, similarly, defendant's basic position was that
the victim had fabricated the charges in order to
avoid his discipline and to avoid the consequences of
her own bad behavior. As with *Starr*, here there was
no medical evidence to substantiate the victim's
claims. Here, as in *Starr*, the half-sister's testimony
was the only evidence that effectively refuted defend-
ant's defense of fabrication.

I also note that the majority in *Starr* went to con-
siderable lengths to overrule the reasoning of this
Court with respect to the third leg of *VanderVliet*.[45]
The majority commented:

> It [this Court] also failed to state the proper inquiry,
> which is not whether the testimony was more prejudicial
> than probative, but whether the probative value is *substan-
> tially* outweighed by the risk of unfair prejudice. Second,
> while we would agree that the acts described in the prof-
> fered testimony are certainly "depraved" and of "monstrous
> repugnance," such characteristics were inherent in the
> underlying crime of which defendant stood accused. The

---

[45] This Court had stated that the allegations of similar acts were "hor-
rendously prejudicial," commenting:

> This was not a skunk in the jury box. It was a pig farm. No trier
> of fact could have been unswayed by the depiction of this deprav-
> ity in assessing discrete claims of the "bad man's" guilt. [*People v
> Starr*, 217 Mich App 646, 648; 553 NW2d 25 (1996).]

danger the rule seeks to avoid is that of unfair prejudice,
not prejudice that stems only from the abhorrent nature of
the crime itself. [*Starr, supra* at 499-500 (emphasis in the
original).]

Thus, under *Starr*, the fact that the other-acts evi-
dence involves, as it does here, acts of considerable
depravity and repugnance that were by their very
nature prejudicial[46]—indeed, short of murder, incest
is probably the strongest taboo in our society—does
not automatically make that evidence *unfairly* preju-
dicial. The unfairness of the prejudice is to be
weighed against the probative value of the evidence,
not against the nature of the crime. Under *Starr*, I
would find that the probative value of the prior-
uncharged-acts evidence was relevant principally to
the victim's credibility and that this was the basic
issue confronting the jury. When weighing the poten-
tial for *unfair* prejudice against the probative value
of the evidence regarding the basic issue in the case, I
would find that the scales tip toward admission.

(5) CRAWFORD

The majority in *Crawford* repeats the concept that
evidence is *unfairly* prejudicial when there exists a
danger that marginally probative evidence will be
given undue or preemptive weight by the jury. *Craw-
ford, supra* at 398. The majority went on, however, to
observe:

---

[46] I observe, in passing, that *any* evidence contrary to a defendant's the-
ory or explanation is prejudicial. Quite obviously, prejudice *alone* is not a
basis on which evidence may be excluded under MRE 403. Rather, MRE
403 directs the trial court to look at "the danger of *unfair* prejudice" as a
factor in weighing the admissibility of evidence. (Emphasis added.)

In the context of prior bad acts, that danger is prevalent. When a juror learns that a defendant has previously committed the same crime as that for which he is on trial, the risk is severe that the juror will use the evidence precisely for the purpose that it may not be considered, that is, as suggesting that the defendant is a bad person, a convicted criminal, and that if he "did it before he probably did it again." *People v Johnson*, 27 F3d 1186, 1193 (CA 6, 1994). Because prior acts evidence carries with it a high risk of confusion and misuse, there is a heightened need for the careful application of the principles set forth in MRE 403. [*Id.*][47]

This is certainly language with which to reckon. And yet, I am constrained to note that the majority's initial reference was to "marginal" evidence. In light of the facts in *Crawford*, this reference is sensible. The facts here, however, mirror the facts in *Starr* and the prior-uncharged-acts evidence was relevant directly to the basic issue in the case: the victim's credibility. Simply put, if the jury believed the victim, then it would almost surely convict; if the jury did not believe the victim, then it almost surely would acquit. The prior-uncharged-acts evidence was powerfully probative with respect to the victim's credibility because it corroborated her testimony in the only way possible, in light of the absence of other witnesses to the charged

---

[47] Justice BOYLE, dissenting, frontally attacked this "heightened" scrutiny standard for other acts evidence. She concluded that the majority's citation of *People v Allen*, 429 Mich 558; 420 NW2d 499 (1988), suggested that the majority's approach "is itself a masquerade, concealing an assertion of closer appellate control over evidentiary rulings by elevating the prosecutor's burden under Rule 404(b)." *Crawford, supra* at 404 (BOYLE, J., dissenting.) Justice BOYLE cited *VanderVliet, supra* at 73, for the proposition that fear of the jury conflicts with the Rules of Evidence and "with the intuitive sense that some bad acts evidence is so powerfully probative that it would pervert the truth-seeking process to prevent a jury from using what looks like ordinary common sense." *Crawford, supra* at 404.

crime (which, I concede, are almost always missing in criminal sexual conduct cases) and of medical evidence.

The fact that the trial court engaged in no overt balancing on the record is certainly troubling, but I do note that the trial court not only heard the half-sister's testimony outside the jury's presence before finally ruling that testimony to be admissible but also issued a cautionary instruction to the jury both at the time the half-sister's testimony came in *and* at the close of the trial. Certainly there was prejudice to defendant but I would hold that, in light of the probative value of the prior-uncharged-acts evidence and in light of the trial court's efforts to assure that the jury kept the evidence in the proper perspective, the prejudice did not reach the level of unfairness necessary to cause the evidence to be excluded. In addition, I do not believe that the introduction of the prior-uncharged-acts evidence had any great potential to cause confusion of the issues or to mislead the jury.

### C. THE STATE AGENCY ORDER EVIDENCE

#### (1) THE PROSECUTOR'S ARGUMENTS AND THE TRIAL COURT'S RULING

The situation with respect to the state agency order evidence is somewhat similar. As noted above, the prosecutor offered this evidence to show that defendant was subject to the state agency order, thereby explaining the victim's delay in making a report of the offense. Defense counsel articulated the theory that the victim had fabricated the charges and objected to the evidence but did not request a cautionary instruction. The trial court ruled that the evidence was

admissible without any detailed finding or analysis of the *VanderVliet* standards on the record. In fact, defense counsel did not later attempt to attack the victim's credibility by raising the issue of her delay in making a report.

### (2) *SABIN I*

*Sabin I* noted:

> During trial, the prosecutor repeatedly referenced this testimony. For example, the prosecutor asked the victim whether "someone" may get in trouble if anyone knew defendant was visiting the family. In addition, during closing argument and rebuttal, the prosecutor referred to the agency order while arguing that the jury should believe the victim. [*Sabin I, supra* at 537-538.]

As I have pointed out above, the prosecutor examined the victim *after* the bulk of the evidence of the state agency order came in through the testimony of the victim's mother. Quite obviously, however, this direct examination occurred *before* defense counsel cross-examined the victim. Again, therefore, the prosecutor had no way of knowing *at the time of her direct examination of the victim* that defense counsel would not make any issue of the victim's delay in reporting the offense.

The question of the prosecutor's later reference to the state agency order evidence is, however, a different one. Defendant suggests that the prosecutor was engaging in "impermissible innuendo, improper inference and speculation,"[48] and *Sabin I* implied a similar

---

[48] The prosecutor stated in her rebuttal argument:

> What we do now [sic, know ] is that the Defendant was not to have any contact with those girls.

conclusion. I suggest that this is something of an apples and oranges formulation. The issue before the *Sabin I* panel was not whether the prosecutor engaged in misconduct. I maintain that the issue was whether the state agency order evidence was unfairly prejudicial *at the time it was admitted*. Whether the prosecutor later unfairly exploited the admission of that evidence is an entirely different question and one that the third leg of *VanderVliet* did not deal with at all. ·

On a different point, *Sabin I* commented that "[i]f the police believed that the victim had been raped, the family would have been separated irrespective of the terms of defendant's parole." *Sabin I, supra* at 539. Here, I believe *Sabin I* missed the point of the prosecutor's argument: that the reason for the victim's *delay* in reporting the offense was that she feared that to do so would cause the breakup of her family. This point is particularly telling in light of the fact that defendant apparently cautioned the victim that this would be the exact consequence of any such report. Quite obviously, in order for the police to believe the victim, she would first have to make this

---

And, we do know that the Defendant was engaging in some pretty risky behavior. Mr. Bent [defendant's employer] himself told you that. He knew that the behavior was risky by coming up to Kalamazoo and visiting his family. What type of person engages in that kind of risky behavior. And, what drives that risky behavior. Is that risky hav—behavior driven so that there will be an opportunity.

\*   \*   \*

This is a man who took great risks. His, employer knew he was taking great risks.

report. *Sabin I*'s comment is more than a little puzzling on this point.

### (3) *SABIN II*

*Sabin II* concludes that the probative value of the state agency order evidence was "*substantially* outweighed" by the danger of unfair prejudice. *Sabin II, ante* at 11. (Emphasis in the original.) Again, I do not agree and simply reiterate that I believe that *Sabin II* reaches this conclusion through an exercise in retroactive reasoning.

### (4) *STARR*

As I commented above, as a general proposition, *Starr* can certainly be read as indicating that explanations regarding delays in reporting abuse are relevant. In addition, the facts of *Starr* are remarkably similar to the facts in this case. Standing alone, I would read *Starr* as supporting the admission of the state agency order evidence.

### (5) *CRAWFORD*

With regard to this issue, the conclusion that the prosecutor offered the state agency order evidence for a purpose other than to show defendant's propensity to commit crime is a reasonably logical one. Under *Crawford*, I do not see that the fact the victim's delay in reporting the offense later evaporated as an issue at trial changes this conclusion. Again, the reasons for this delay were relevant to a potential issue in the case *at the time the evidence was introduced.* Further, I do not believe that the introduction of the state agency order evidence had any major potential to confuse the issues or mislead the jury. I

would conclude that the state agency order evidence remained admissible under *Crawford.*

### VI. LIMITING INSTRUCTIONS

#### A. INTRODUCTION

The fourth leg of *VanderVliet,* that the trial court may, upon request, provide a limiting instruction to the jury, derives from *Huddleston, supra. Vander-Vliet, supra* at 55, n 2. *Huddleston,* in turn, notes that this leg derives from Federal Rule of Evidence 105. *Huddleston, supra* at 691. MRE 105, which is identical to FRE 105, provides:

> When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly.

#### B. THE PRIOR-UNCHARGED-ACTS EVIDENCE

#### (1) THE TRIAL COURT'S RULING

The trial court, upon request by defense counsel, provided a limiting instruction to the jury before it heard the testimony of the half-sister concerning the prior uncharged acts. The trial court stated:

> Members of the jury, before we receive the testimony of [the half-sister] I'm going to advise you ahead of time that you are going to hear evidence or testimony concerning a prior incident, or incidents which occurred of a sexual nature between this Defendant and this witness while she was a member of the Defendant's household. You must be very careful how you consider this evidence. You must not decide that it shows that the Defendant is a bad person or that he is likely to commit crimes, or that it was more prob-

able than not that he committed the offense for which he is
on trial.

   You must not ultimately convict the Defendant because
you think he is guilty of other bad conduct.

   In the final analysis, and I'll give you a more detailed
instruction later on at the conclusion of these proofs, the
relevancy of this testimony is to show, in my opinion, the
Defendant's scheme, plan or system of how he does certain
things. It is not—you must not conclude, and you cannot
conclude or infer that because he may have done something
wrong in the past that he, therefore, did something wrong
in the incident for which he is on trial.

The trial court also gave a substantially similar limit-
ing instruction to the jury at the conclusion of the
case. I note, again, that I believe the prosecutor's
"plan or scheme" rationale for admitting the prior-
uncharged-acts evidence to have been a weak one.
While I consider the evidence admissible, I therefore
concede that the trial court's rationale for admitting it
was similarly weak. However, I believe that the prose-
cutor articulated other, stronger reasons for admitting
the evidence. I therefore would conclude, following
my reading of *Engelman*, that the fact that the trial
court may have erred in describing the theory for the
relevance of the prior-uncharged-acts evidence is not
fatal on appeal, given that a proper theory existed
and the prosecutor articulated that theory. With this
caveat in mind, I believe that the trial court's limiting
instructions to the jury regarding the prior-uncharged-
acts evidence were proper under the fourth leg of
*VanderVliet*, *Huddleston*, and MRE 105.

(2) SABIN I

   *Sabin I* did not directly address the fourth leg of
*VanderVliet*.

### (3) *SABIN II*

Similarly, *Sabin II* does not directly address the fourth leg of *VanderVliet*

### (4) *STARR*

Moreover, other than reiterating the four-legged standard, *Starr, supra* at 496, and commenting that the fourth leg needs no clarification because it merely authorizes a limiting instruction on request, *Starr, supra* at 498, *Starr* does not directly address the fourth leg of *VanderVliet.*

### (5) *CRAWFORD*

Finally, other than reiterating the four-legged standard, *Crawford, supra* at 385, *Crawford* does not directly address the fourth leg of *VanderVliet.* I conclude that the trial court's limiting instructions, even though they were premised on an admittedly weak rationale, were proper under the fourth leg of *VanderVliet.* I believe, therefore, that these instructions served to restrict the prior-uncharged-acts evidence to its proper scope, as MRE 105 requires.

### C. THE STATE AGENCY ORDER EVIDENCE

Defense counsel did not request a limiting instruction with regard to the state agency order evidence and the trial court did not give one. I believe that the fourth leg of the *VanderVliet* test therefore is not applicable to the state agency order evidence. While the fact that the trial court did give limiting instructions regarding the prior-uncharged-acts evidence may be a factor weighing in favor of its admissibility, I do not believe that this particular street runs both

ways; that is, I do not believe that a failure, whether intentional or otherwise, to request a limiting instruction can cause other-acts evidence to be inadmissible if such evidence was otherwise admissible.

### VII. CONCLUSION

To be, perhaps, overly dramatic, one can easily argue that a dense, almost impenetrable, fog of words has fallen over the much-contested battlefield of other-acts evidence under MRE 404(b). On the one side are arrayed members of the Michigan Supreme Court, and others, who make up the exclusionary camp. Proponents of this point of view rightly note that a fundamental premise of our criminal justice system is that a defendant is presumed innocent and may be convicted only if the jury finds that the defendant is guilty beyond a reasonable doubt. The basic problem with other-acts evidence, those who hold this view would argue, is that it may be used to convict a defendant not of the crime for which the defendant is charged but of some other, and earlier, crime. This, the proponents would say, is antithetical to the precept that "a defendant starts his life afresh when he stands before a jury . . .," *Crawford, supra* at 384, quoting *People v Zackowitz,* 254 NY 192, 197; 172 NE 466 (1930). Justice Cardozo memorably summed up this point of view when he noted that the "reverberating clang" of other-acts evidence may drown out the "weaker sound" of other evidence properly admitted, leaving the jury to hear only the inference that if a given defendant did it before, that defendant probably did it again. *Crawford, supra* at 398-399, quoting *Shepard v United States,* 290 US 96, 104; 54 S Ct 22; 78 L Ed 196 (1933).

On the other side are arrayed members of the Michigan Supreme Court, and others, who make up the inclusionary camp. While perhaps conceding the rhetorical high ground to the exclusionary camp, proponents of this point of view would argue that other-acts evidence, if proposed for a proper purpose, if it is logically and legally relevant, if its probative value is not substantially outweighed by the danger of unfair prejudice, and if it is subject, upon request, to a proper limiting instruction, should be left to the proper discretion of the trial court and to the great and pervasive common sense of American juries. The proponents of this view would further say that if it is a close call, this Court does not ordinarily find that a lower court abused its discretion merely because we would have reached a different result. *People v Bahoda*, 448 Mich 261, 289; 531 NW2d 659 (1995), quoting *Golochowicz, supra* at 322.

I personally lean to the latter view. I emphasize again, however, that such inclinations at an intermediate appellate level, while perhaps interesting, are of no particular importance. The Supreme Court has required us to sort through the facts of this case in light of *Starr* and *Crawford*. I have attempted to do so above, no doubt in overly excruciating detail. As a result of that analysis, I would find the prior-uncharged-acts evidence and the state agency order evidence to be admissible under *VanderVliet*, as amplified in *Starr* and *Crawford*.